**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH W. BECK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 4:12 CV 1300 DDN |
| | ) | |
| TROY STEELE, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM

This action is before the court upon the petition of Missouri state prisoner Kenneth W. Beck for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 6.) For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I. BACKGROUND

On January 22, 2009, the Circuit Court of Montgomery County found petitioner Kenneth W. Beck guilty of murder in the first degree and armed criminal action following a bench trial. (Doc. 5, Ex. B at 25.) On February 27, 2009, the court sentenced petitioner to life in prison without parole for murder and twenty additional years for armed criminal action to be served concurrently. (Id. at 26.) On February 2, 2010 the Missouri Court of Appeals affirmed the conviction. (Id., Ex. E); State v. Beck, 302 S.W.3d 781 (Mo. Ct. App. 2010).

On April 1, 2010, petitioner filed a pro se motion for post-conviction relief under Missouri Supreme Court Rule 29.15 in the circuit court of Montgomery County. (Doc. 5, Ex. G at 3-12.) On July 19, 2010, with the assistance of appointed counsel, petitioner filed an amended petition for post-conviction relief. (Id. at 13-23.) On September 24,

2010, the Circuit Court of Montgomery County denied post-conviction relief to the petitioner. (Id. at 24-32.) On October 24, 2011, the Missouri Court of Appeals affirmed the trial court's denial of post-conviction relief. (Id., Ex. J); Beck v. State, 351 S.W.3d 250 (Mo. Ct. App. 2011).

On July 20, 2012, petitioner filed the instant habeas corpus petition under 28 U.S.C. § 2254. (Doc. 1.)

In denying petitioner's direct appeal, the Missouri Court of Appeals described the facts, viewed in the light most favorable to the verdict, as follows:

> On June 11, 2006 [petitioner] called Warren County 911 and stated he had returned home to find his girlfriend, Stacie Hough ("the Victim"), dead in his trailer. [Petitioner] directed the responding officers to the Victim's body in the back bedroom; she was cold to the touch and exhibited facial swelling. Though the front door had been kicked in and most of the trailer was in disarray, the bedroom appeared orderly and there were no signs of struggle.
>
> Dr. Jane Turner ("Dr. Turner"), the medical examiner in the case, performed an autopsy on June 12, 2006. She determined that the Victim had been strangled to death with a rope-like object, sometime around June 10, 2006, two days prior to her examination. Dr. Turner further testified that she found no defensive wounds on the Victim's neck or body – an indication that she remained unconscious during the strangling. The toxicology report showed that the Victim had recently ingested various prescription medications, as well as cocaine. Dr. Turner testified, however, that she would not still have been under the influence of cocaine at the time of her death.
>
> The police interviewed [petitioner] at the Warren County jail for approximately one hour on the evening of June 11, 2006, though he was not in custody or a suspect at that time. [Petitioner] told officers that he lived with the Victim, but stated he had been with friends since the day before. According to [petitioner], he left the trailer at approximately 10:30 p.m. on June 10, 2006, and returned home at about 6:10 p.m. on June 11, 2006. He discovered the front door kicked in and the Victim murdered in the back bedroom. [Petitioner] provided a list of people who could attest to his whereabouts during the preceding twenty-four hours. The officers spoke with [petitioner's] witnesses, none of whom corroborated his story.

Thus, police interviewed [petitioner] two additional times, once on the afternoon of June 12, 2006, and again on the morning of June 13, 2006.[1] [Petitioner] also testified at trial. Though his version of events varied slightly throughout the remainder of the proceedings, [petitioner] consistently admitted to strangling the Victim to death with a hairdryer electrical cord.

[Petitioner] provided the most details about the crime during his third interview with police on June 13, 2006. He told them that the Victim arrived home on the evening of June 10, 2006, and appeared to be under the influence of drugs.[2] [Petitioner] became upset, and the two started to argue. The Victim, according to [petitioner], attacked his character and threw items at him. [Petitioner] followed her to the bedroom and punched her in the face, whereupon the Victim lost consciousness. [Petitioner] said he then began choking her with his hands. When that method proved ineffective, however, [petitioner] went to get the hairdryer that the Victim had been swinging at him. He said he tied the cord in a knot around the Victim's neck and strangled her for a few minutes until he believed her dead.

[Petitioner] stated he then visited a friend's house and began to drink heavily. He said he paid the friend $500 in order to provide an alibi for [petitioner] to the police. The next morning, June 11, 2006, [petitioner] visited another friend, Charlene Best ("Ms. Best"), and paid her $500 for the same reason. Ms. Best testified at trial that she saw [petitioner] on June 11, but denied that he paid her a bribe. She did state, however, that she inquired about his girlfriend's whereabouts and [petitioner] replied, "I killed the bitch."

At trial, [petitioner] testified that he strangled the Victim out of anger during a heated argument, and stated he did not reflect or deliberate

---

[1] The Missouri Court of Appeals included the following footnote: "All three interviews with police were recorded on DVD, and [petitioner] was in custody of the Warren County Jail between the second and third interview. Law enforcement read [petitioner] his Miranda rights, Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to the final two interviews."

[2] The Missouri Court of Appeals included the following footnote: "After police confronted [petitioner] with evidence of he and the Victim on video surveillance at Kroger's that evening, [petitioner] changed his story and said the two began arguing when they returned from the grocery store."

on her killing. According to [petitioner], the Victim was swinging a hairdryer at him as he followed her to the bedroom. He grabbed the hairdryer from her and flung it to the floor. [Petitioner] then grabbed the Victim, hit her in the face, and knocked her unconscious. At that point, [petitioner] testified he grabbed the hairdryer, wrapped the cord around her neck, and strangled her.

The trial court convicted [petitioner] of first-degree murder and armed criminal action, and sentenced him to life imprisonment without the possibility of parole.

(Doc. 5, Ex. E, Memorandum Supplementing Order at 2-4.)

## II. PETITIONER'S GROUNDS FOR HABEAS CORPUS RELIEF

Petitioner alleges four grounds for relief in this habeas action:

(1)     The evidence was insufficient to support a finding of guilty beyond a reasonable doubt for the charge of murder in the first degree.

(2)     Petitioner was denied his rights to due process of the law and to counsel at all critical stages of proceedings because he did not have counsel at his arraignment.

(3)     The trial court erred in admitting petitioner's statements to investigators during his second and third interviews.

(4)     Petitioner was denied his right to effective assistance of counsel because his trial counsel failed to prepare petitioner to testify.

(Doc. 1 at 2-15.)

Respondent contends that Ground 1 is without merit because the Missouri court's decision was reasonable; that Grounds 2 and 4 are procedurally barred because petitioner did not raise them in the post-conviction relief appeal; and that Ground 3 is procedurally barred and meritless. (Doc. 5 at 1-2.)

## III. EXHAUSTION AND PROCEDURAL BAR

Congress requires that state prisoners exhaust their state law remedies for claims made in federal habeas corpus petitions filed in district court under 28 U.S.C. § 2254.

See 28 U.S.C. § 2254(b)(1)(A). A state prisoner has not exhausted his remedies "if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). As discussed above, petitioner filed a direct appeal, a motion for post-conviction relief, and appealed the denial of his motion for post-conviction relief.

Exhaustion in the sense that petitioner now has no remaining procedure for bringing a claim to the state court does not, however, satisfy the federal statutory requirement. Rather, a petitioner must have fairly presented the substance of each federal ground to the trial and appellate courts. Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam). If he has not done so and has no remaining procedure for doing so because he has defaulted on the legitimate requirements of the otherwise available procedures, any such ground for federal habeas relief is barred from being considered by the federal courts. Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011); King v. Kemna, 266 F.3d 816, 821 (8th Cir. 2001) (en banc); Sweet v. Delo, 125 F.3d 1144, 1149-50 (8th Cir. 1997) (petitioner's failure to present a claim on appeal from a circuit court ruling raises a procedural bar to pursuing the claim in a habeas action in federal court). The doctrine of procedural bar applies whether the default occurred at trial, on appeal, or during state court collateral attack. See Murray v. Carrier, 477 U.S. 478, 490-92 (1986).

Petitioner presented Ground 1 to the Missouri Court of Appeals. (Doc. 5, Ex. C at 13.) Accordingly, Ground 1 is not procedurally barred.

Petitioner raised Grounds 2 and 4 in his amended post-conviction relief motion. (Id.; Ex. G at 14.) However, on appeal, appellant failed to raise Grounds 2 and 4. (Id.; Ex. H.) Accordingly, Grounds 2 and 4 are procedurally barred.

Petitioner failed to raise Ground 3 upon appeal of the trial court's conviction. (Id.; Ex. C.) Accordingly, Ground 3 is procedurally barred.

Nevertheless, petitioner may avoid procedural bar if he can demonstrate legally sufficient cause for the default and actual prejudice resulting from it, or if he can demonstrate that failure to review the claim would result in a fundamental miscarriage of

justice.  <u>Maples v. Thomas</u>, 132 S. Ct. 912, 922 (2012); <u>Coleman v. Thompson</u>, 501 U.S. 722, 749-50 (1991).  Petitioner alleges no grounds to avoid procedural bar.

However, Congress has authorized federal courts to consider the merits of procedurally barred grounds and to dismiss them, if they conclude that the grounds are without merit.  28 U.S.C. § 2254(b)(2).  The undersigned has considered all of petitioner's federal grounds on their merits.

## IV. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) requires that habeas relief may not be granted by a federal court on a claim that has been decided on the merits by a state court unless that adjudication:

    (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A state court's decision is contrary to clearly established federal law if it "arrives at a conclusion opposite to that reached by [the] Court on a question of law or . . . decides a case differently than [the] Court has on a set of materially indistinguishable facts." <u>Thaler v. Haynes</u>, 559 U.S. 43, 47 (2010) (per curiam) (citation omitted).  This standard is difficult to meet because habeas corpus "is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  <u>Harrington v. Richter</u>, 131 S. Ct. 770, 786 (2011) (citation omitted).  A state court's decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Thaler</u>, 559 U.S. at 47.

A state court's factual findings are presumed to be correct. 28 U.S.C. § 2254(e)(1); Wood v. Allen, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); Wood, 558 U.S. at 293.

Where a petitioner's claims were not adjudicated on the merits by a state court, the pre-AEDPA standard for habeas review governs. Gingras v. Weber, 543 F.3d 1001, 1003 (8th Cir. 2008) ("Because [petitioner's] apparently unexhausted claim was not adjudicated on the merits, we likely should apply the pre-AEDPA standard of review, rather than the deferential standard of 28 U.S.C. § 2254(d).") (internal citations and quotations omitted); Montes v. Trombley, 599 F.3d 490, 495 (6th Cir. 2010). Under the pre-AEDPA standard, the habeas petitioner must show a "reasonable probability that the error complained of affected the outcome of the trial or that the verdict likely would have been different absent the now-challenged [defect]." Robinson v. Crist, 278 F.3d 862, at 865-66 (8th Cir. 2002).

## V. DISCUSSION

### A. Ground 1

In Ground 1, petitioner alleges there was insufficient evidence to support a finding of guilt of murder in the first degree beyond a reasonable doubt. Specifically, he alleges there was not enough evidence to support the requisite deliberation required for a conviction of first degree murder. (Doc. 1 at 17-20.)

A challenger to a state criminal conviction brought under 28 U.S.C. § 2554 is entitled to habeas relief if it can be established from the evidence on the record that no rational trier of fact could have found proof beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324 (1979).

Under Missouri law, one is guilty of first degree murder if he (1) knowingly (2) causes the death of another person (3) after deliberation upon the matter. Mo. Rev. Stat. §

565.020.  Deliberation is defined as "cool reflection for any length of time no matter how brief."  Mo. Rev. Stat. § 565.002.  "[I]t is necessary only that the killer had ample opportunity to terminate the attack once it began."  State v. Knese, 985 S.W.2d 759, 769 (Mo. banc 1999) (quoting State v. Johnston, 957 S.W.2d 734, 747 (Mo. banc 1997)).

Deliberation may be inferred from the circumstances surrounding the murder.  State v. Davis, 32 S.W.3d 603, 610 (Mo. App. E.D. 2000).  "Deliberation is properly inferred where the defendant had ample opportunity to terminate the crime as well as where the victim sustained multiple wounds or repeated blows."  Id.  "For example, a prolonged struggle may be evidence of deliberation."  Id.

The appellate court found there was sufficient evidence to prove petitioner's deliberation.  (Doc. 5, Ex. E at 6.)  The appellate court first discussed how petitioner struck the victim several times knocking her unconscious, attempted to strangle the victim, then decided to strangle her with the electrical cord to a hairdryer.  (Id.)  Further, it concluded that petitioner had ample opportunity to terminate the crime, because he testified that he made a choice about whether to walk away or to kill the victim.  (Id.)

The appellate court then looked at petitioner's attempts to conceal his involvement in the crime by wiping off the hairdryer and paying alibi witnesses which can be construed as evidence of deliberation.  (Id.)  Lastly, the court considered petitioner's initial lies to the police when it concluded there was evidence of sufficient deliberation.  (Id.)  The appellate court concluded that there was ample evidence from which a reasonable trier-of-fact might have found beyond a reasonable doubt that petitioner deliberated on killing the victim.  (Id., Ex. E at 7.)

The appellate court did not unreasonably apply federal law.  First, the record shows that petitioner, in his third interview, told police he punched the victim in the face rendering her unconscious.  (Doc. 5; Ex. A at 80.)  Furthermore, in the same interview, he stated he began choking the victim with his hands which proved ineffective.  (Id.)  Next, petitioner testified he tied the electrical cord of a hairdryer in a knot around the victim's neck and strangled her for about two to four minutes until he believed her to be dead.  (Id.

at 180.)  Lastly, when asked at trial whether he had a choice whether to walk away or kill the victim, petitioner replied in the affirmative.  (Id. at 189.)

The combination of the blow to the head, the first attempted strangling with the hands, and the second successful strangling with the electrical cord constitutes multiple blows that indicate deliberation.  Also, the strangling took several minutes, or a prolonged struggle which implies deliberation.  Further, petitioner's own response to the query regarding his ability to walk away or kill the victim renders his argument meritless. While petitioner testified regarding acting in the heat of the moment, this alone does not meet his burden of showing that the state appellate court unreasonably applied the applicable law in order to deny relief.  A rational trier of fact could find, beyond a reasonable doubt, that petitioner deliberated to the degree necessary to find him guilty of first degree murder. Therefore, Ground 1 is without merit.


**B.  Ground 2**

In Ground 2, petitioner argues he was denied his constitutional rights to due process and to counsel throughout all critical stages of the proceedings.  More specifically, he argues he lacked counsel during his arraignment.  (Doc. 1 at 21.)

The Supreme Court has stated the Sixth Amendment right to counsel applies at all critical stages of the proceedings.  United States v. Wade, 388 U.S. 218, 227 (1967). Under Missouri law, arraignment is not a critical stage of the proceedings.  McClain v. Swenson, 435 F.2d 327, 330 (8th Cir. 1990).

For due process violations, "[t]he petitioner must show that the alleged improprieties were 'so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair.'"  Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987).  "To carry that burden, the petitioner must show that there is a reasonable probability that the error complained of affected the outcome of the trial—i.e., that absent the alleged impropriety the verdict probably would have been different." Id.

The post-conviction motion court found that petitioner testified that he made no incriminating statements during his arraignment.  (Ex. G at 32.)  Further, the post-

conviction motion court found petitioner further testified that nothing that occurred at his arraignment was used against him at trial.  (Id.)  Thus, the court found no prejudice from petitioner's lack of counsel at his arraignment.  (Id.)

The post-conviction motion court did not unreasonably apply federal law. Petitioner testified that the state used no statements made during the arraignment against petitioner at trial.  Since nothing from the arraignment was used at trial, it cannot follow that petitioner's lack of counsel at the arraignment stage affected the verdict.  Had petitioner been accompanied by counsel at his arraignment, the verdict would have been the same.  Therefore, Ground 2 is without merit.

## C.  Ground 3

In Ground 3, petitioner argues the trial court erroneously admitted into evidence his statements during his second and third interviews with police.  Specifically, petitioner argues his confession was coerced and involuntary due to promises of leniency or threats of retribution by Officer Marshall Broughton.  (Doc. 1 at 22.)  This ground is without merit.

"A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination."  Simmons v. Bowersox, 235 F.3d 1124, 1132 (8th Cir. 2001).  "In applying this test, we look at the totality of the circumstances surrounding the interrogation, including law enforcement officials' conduct and the defendant's capacity to resist any pressure."  Id.  "Specifically, we consider factors such as detention length, the repetitive and prolonged nature of questioning, and the accused's age."  Id. at 1132-33.  "The statement to an accused that telling the truth 'would be better for him' does not constitute an implied or express promise of leniency for the purpose of rendering his confession involuntary."  Id. at 1133.

Here, nothing in the record shows any type of threats, violence, or promises sufficient to overbear petitioner's will and critically impair his capacity for self-determination.  Nothing in the record shows any indication of excessive interrogation,

and petitioner testified that he told the whole story in the third interview.  Next, nothing in the record suggests any extended questioning or detention length.  Petitioner was detained following the second interview.  Adding together the factors set out in Simmons, the totality of the circumstances did not demonstrate that petitioner's statements in the third interview were involuntary.  Moreover, Officer Broughton's suggestion of possible leniency or harsher punishment does not make unreasonable the state court's conclusion that petitioner's statements during the interviews were voluntary.

Therefore, Ground 3 is without merit.


## D.  Ground 4

In Ground 4, petitioner argues he was denied the right to effective assistance of counsel because his trial counsel failed to prepare him to testify.  Specifically, he argues his trial counsel did not allow him to review the videotaped statements given to investigators, which allowed the prosecution to impeach his testimony.  (Doc. 1 at 24.) Petitioner argues that, had he reviewed the videotaped statements, he would not have testified.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court determined that the right to effective assistance of counsel arises from the Sixth and Fourteenth Amendments.  Under Strickland, a petitioner is entitled to federal habeas corpus relief upon a showing that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  Id. at 686.

Petitioner must prove two elements to prevail on a claim of constitutionally ineffective assistance of counsel.  First, petitioner must demonstrate that counsel's performance fell below an objective standard of reasonableness.  Id. at 687–88.  There is a strong presumption that counsel has rendered constitutionally effective assistance.  Id. at 690; Blackmon v. White, 825 F.2d 1263, 1265 (8th Cir. 1987).  Counsel's strategic choices made after thorough investigation are virtually unchallengeable, and decisions following reasonable, but less thorough, investigation are to be upheld to the extent that

they are supported by reasonable judgment.  <u>Strickland</u>, 466 U.S. at 690–91.  Second, petitioner must demonstrate actual prejudice by counsel's deficient performance.  <u>Id.</u> at 687.  "[A] court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."  <u>Id.</u> at 696.

The post-conviction motion court found this ground for relief without merit.  The decision was based on substantial evidence.  Although petitioner testified he would have not testified had he reviewed the tapes, he also testified he was aware the tapes would be admitted into evidence and that the tapes contained several confessions including him punching the victim, knocking the victim unconscious, choking the victim with his hands, considering using a lamp cord for strangulation after failing with his hands, and strangling the victim with a hair dryer cord for two to four minutes. (Doc. 5, Ex. G at 29.) Petitioner saw the state's evidence before he took the stand in his defense and nevertheless declined the opportunity to not testify.  The post-conviction court's finding was more than reasonable that petitioner "failed to show any prejudice resulting from trial counsel not giving petitioner the opportunity to review his videotaped statements before trial."  (<u>Id.</u>)

Petitioner fails to show any actual prejudice resulting from trial counsel failing to let petitioner review the video tapes of the interviews.  As stated by the post-conviction motion court, the two taped interviews included several admissions that were included in petitioner's testimony.  (<u>Id.</u>)  Had petitioner not testified at trial, the prosecution's evidence in its case-in-chief would not have retrospectively been changed.  The videotapes, which included crucial admissions, would have been properly admitted regardless of whether petitioner testified at trial or not.  If he had not testified, petitioner still would have been convicted.  Petitioner did not suffer any prejudice by Ground 4. The state court did not unreasonably apply federal law.  Ground 4 is without merit.

## VI.  CONCLUSION

For the reasons stated above, the petition of Kenneth W. Beck for a writ of habeas corpus is denied.

Petitioner has made no substantial showing of the denial of any constitutional right.  Therefore, the court does not issue a certificate of appealability.  28 U.S.C. § 2253(c)(2).

An appropriate Judgment Order is issued herewith.


_____/S/   David D. Noce_____
**UNITED STATES MAGISTRATE JUDGE**


Signed on June 6, 2014.